132 So.2d 788 (1961)
C.L. BENNETT, D/B/a C.L. Bennett Construction Company, Appellant,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, an Insurance Stock Company, Appellee.
No. C-159.
District Court of Appeal of Florida. First District.
September 7, 1961.
*789 Hall, Hartwell & Douglass, Tallahassee, for appellant.
Thompson & Morrison, Tallahassee, for appellee.
CARROLL, DONALD K., Chief Judge.
The plaintiff, C.L. Bennett, doing business as C.L. Bennett Construction Company, has appealed from an adverse final decree entered by the Circuit Court for Leon County in his suits for a declaratory decree to determine the duty of the defendant, a public liability insurance company, to defend him in an action brought against him for damages.
The liability policy issued by the defendant to Bennett contains a provision that the insurer, within the limits of the policy, would pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of injury to or destruction of property "caused by accident," defend any suit against the insured alleging such injury or destruction, etc. This provision is denominated "Coverage C" in the policy in question.
In his complaint Bennett alleged that on October 30, 1959, an action at law for damages was filed against him by Robert J. Alexander and Nina J. Alexander, co-partners doing business as Alexander Lumber & Supply Company, attaching a copy of the original and amended complaints filed by the Alexanders. Bennett alleged that he, through his attorney, sent a copy of the said amended complaint to the appellee, demanding that it assume the defense of the action under the said insurance contract, but the appellee declined to do so.
The second count of the Alexanders' amended complaint alleged the following as to their cause of action against Bennett:
"That the defendant on or prior to the 21st day of October, 1959, did negligently construct a dam or dike in a drainage ditch on the west side of Lake Bradford Road in close proximity to the plaintiffs' business premises, thereby, on said date after a heavy rain, and as a direct result of the construction of the dike or dam, causing the plaintiffs' business premises and property to become inundated and damaged; that the plaintiffs complained to the defendant, whereupon the defendant removed or breached such dam and the water immediately receded from plaintiffs' business premises and property;
"That the defendant thereafter did negligently and wilfully reconstruct the aforesaid dam and did refuse to move or breach the same during a heavy rain on October 29, 1959, and on said date the plaintiffs' business premises and property again became flooded and damaged as a direct result of the said construction of such dam and the refusal of defendant to remove or breach said dam when heavy rains began; that upon construction of the above-mentioned dam on or before the 21st day of October, 1959, the defendant knew, or should have known, that the construction of such dam would result in the flooding of the plaintiffs' business *790 premises and property; that upon reconstruction of such dam between October 21, 1959, and October 29, 1959, the defendant knew that the construction of said dam would probably result in the flooding of plaintiffs' business premises and property and would result in damage thereof unless the dam was breached during periods of normal or heavier than normal rainfall. * * *"
The Alexanders then alleged that, as a result of Bennett's acts, certain merchandise belonging to them was damaged, their place of business was temporarily closed down, and they were put to great expense, to their damage in the amount of $1,000.
The first count in the Alexanders' amended complaint is substantially similar to the second count, with the major exception that in the first count they alleged that Bennett negligently reconstructed the dam and negligently failed to breach or remove it during the heavy rain, instead of alleging, as in the second count, that Bennett negligently and wilfully reconstructed the dam. In the third count the Alexanders realleged the quoted paragraphs of the second count, alleged that Bennett wilfully, wantonly, and with gross negligence reconstructed the dam, and they then claimed punitive damages in the amount of $10,000.
The rule seems established everywhere that a public liability carrier's duty to defend the insured in an action brought against him is to be determined from the allegations of the complaint, declaration, or other statement of the cause of action, filed in such action against the insured. See New Amsterdam Casualty Company v. Knowles, Fla. 1957, 95 So.2d 413, and the annotation in 50 A.L.R.2d 465, page 504.
In accordance with this rule, which is applicable in Florida, the sole question before us on this appeal is whether the Alexanders in their amended complaint in their action against Bennett alleged an "accident" within the meaning of that term as used in the insurance contract entered into between Bennett and the appellee insurance company.
In literally hundreds of cases the courts of this nation have attempted to define the meaning of the word "accident." Many of the courts in their definitions have emphasized the element of the "unexpected," while other courts appear to recognize the popular concept of the word in their definitions so that a collision, though the result of negligence, may be considered an "accident." While it is not necessary for us to determine this question here, we are inclined to the view held by the latter courts that simple negligence as a causative force does not necessarily preclude a happening from being classed as an accident. Nevertheless, we are of the view that the element of the "unexpected" remains as an important element in any true legal definition of the term.
We are aided in this determination by two recent decisions rendered by the other district courts of appeal in this state.
In the case of Christ v. Progressive Fire Insurance Company, Fla.App. 1958, 101 So.2d 821, the plaintiff, the insurer, alleged that it had issued its policy of insurance insuring the defendants; that during the policy period the defendants were engaged in the general contracting business and had entered into a contract with a third party to furnish all labor and materials necessary for the re-roofing of the third party's building; that this building had four store buildings on the ground floor leased to various tenants; that the defendants had commenced the re-roofing job but suspended operations for the weekend at about 4:30 p.m. on Friday, July 27, 1956; that on the following Sunday, July 29th, it began to rain, a heavy rain ensued, and rain water seeped through the top of the building and into the store rooms on the ground floor occupied by the tenants; and that the said tenants were calling upon the defendants to reimburse them for damage to their goods and merchandise. The plaintiff further alleged in its complaint that it was not liable *791 to the defendants under the terms of the policy, which provided that liability for damage under the terms of the policy must be caused by an accident and that no accident had been alleged. The coverage provision is almost identical to Coverage C involved in the instant appeal. The trial court entered a summary judgment for the plaintiff, holding that a heavy rain under the circumstances was not an accident under the terms of the policy of insurance. In its decision affirming the summary judgment, the District Court of Appeal for the Second District of Florida relied upon the definition of "accident" laid down by the Supreme Court of Florida in the case of Hardware Mutual Casualty Co. v. Gerrits, Fla. 1953, 65 So.2d 69, 70, as follows:
"An effect which is the natural and probable consequence of an act or course of action is not an accident * * *."
The Second District Court of Appeal also relied heavily upon the reasoning and language of the United States Court of Appeals for the Tenth Circuit in Midland Construction Co. v. United States Casualty Co., 1954, 214 F.2d 665, 666, quoting therefrom the following:
"The meaning of the word `accident' cannot be defined with pinpoint accuracy or definiteness. We sometimes speak of an event which is the usual, natural, and expected result of an act as an accident, but in legal parlance an accident under the terms of an insurance policy, such as we have here, is variously defined as an unusual and unexpected event; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause. It may be that an unprecedented, torrential downpour of rain may under certain conditions be considered an accident, but afternoon showers  and this seems to have been an ordinary rain  are not unusual or unexpected. Common experience teaches that they happen frequently and are of common occurrence. A farmer may go forth in the morning, with not a cloud in the sky, to cut his alfalfa and yet have rain fall before evening. This is of such common occurrence that its happening cannot be said to be unexpected, unusual, or unanticipated, or beyond the ordinary experience of man."
Finally the Second District Court of Appeal held:
"For a contractor to proceed to repair a roof, leave the work unfinished over the weekend during the month of July without taking proper precautions to protect against rain or showers, having every reason to anticipate that a shower is likely to occur in the `rainy season', which is a matter of common knowledge, cannot be held to be an accident. To do so would be to ignore conditions as they exist."
A similar problem confronted the Third District Court of Appeal in the case of Michigan Mutual Liability Company v. G. & L. Roofing Co., Fla.App. 1960, 123 So.2d 300. The facts of the case were as follows: The appellee was engaged in the roofing business and had contracted with a third party to put a new roof on the residence of said third party. Work was begun on said roofing job around 8:00 a.m., June 20, 1958, in Miami, Florida. The record reflects that at that time the skies were clear. The first part of the roofing job was to remove the old roof down to the boards, which was completed about 10:30 a.m. The foreman of the appellee, who was supervising several jobs on this day and was at this particular job at approximately 10:45 a.m., testified that the workmen of the appellee were ready to start putting on the new roof at this time and that the weather was "more or less clear." A laborer for the appellee testified that he first noticed severe rain clouds while taking time off for lunch at 12:00 o'clock. All the laborers went back on the roof and attempted to seal the paper already laid but rain fell before *792 the sealing could be completed causing water damage to the interior of the residence. There was evidence that the rain was heavy but of short duration. The trial court in its final decree held that the appellant was liable to the appellee under the terms of the insurance policy, and the appellant took an appeal from this decree. On the appeal both parties relied upon the decision in Christ v. Progressive Fire Insurance Company, supra, as authority for their positions. The Third District Court of Appeal also relied upon the said case and held:
"The record in the case at bar reveals nothing more than a rapid developing, heavy summer shower, but certainly not unusual for South Florida during the summer months.
"Although there is some difference in the factual situation of the Christ case and the case at bar, it is our opinion that the principles of law enunciated in the Christ case should be applied to the case at bar."
The appellate court then reversed the final decree with directions to the trial court to set aside the final decree and enter a final decree in favor of the appellant.
We do not consider that the above two decisions of our sister district courts of appeal can be judicially distinguished from the case at bar. In fact, we think that the quoted paragraphs from the second count in the Alexanders' amended complaint eliminate more definitely than in the above two cases the element of the "unexpected." The Alexanders alleged that on October 21, 1959, a heavy rain occurred that inundated the Alexanders' property, whereupon Bennett removed or breached the dam and the water immediately receded from their premises, and then that Bennett reconstructed the dam and negligently failed to breach or remove the same during a heavy rain on October 29, 1959, when the damages sued upon occurred. We think these allegations effectively eliminate the idea of the "unexpected," which we think is an important element in a legal definition of the term "accident."
We fully recognize the established rule that an insurance contract is to be construed most strictly against the insurer. See National Automobile Insurance Association v. Brumit, Fla. 1957, 98 So.2d 330 and 18 Fla.Jur., Insurance, § 94. In reaching our conclusion in this case we have applied this rule, but do not believe that it would justify our ignoring the key word "accident" in the present policy of insurance or our rewriting the key provisions of the policy.
In examining the record on this appeal we note that the original contract contains three coverage provisions: Coverage A (bodily injury liability), Coverage B (property damage liability  automobile) and Coverage C (property damage liability  except automobile). All three coverage provisions were restricted to injury or damage "caused by accident." The record shows that, simultaneously with the execution of this insurance contract, Bennett and the appellee executed riders amending the Coverage A and Coverage B provisions by eliminating the words "caused by accident." There was no such amendment to the Coverage C provision, which is involved in this case. The riders showed that by thus eliminating the words "caused by accident" in Coverages A and B, Bennett was required to pay a higher premium. It seems a reasonable deduction, therefore, that Bennett was well aware that the presence of the words "caused by accident" in the three coverage provisions had the effect of limiting the liability of the insurance company. By eliminating those restrictive words from Coverages A and B and by not doing so with reference to those words in Coverage C, Bennett undoubtedly realized that he was running the risk of being sued for damages to property caused other than by an automobile in a cause of action not involving an accident within the meaning of Coverage C, so that the insurer would not be obligated to defend him against such a cause *793 of action. The fact that Bennett and the insurance company eliminated the words "caused by accident" from the other coverage provisions of the insurance contract but did not do so in the coverage applicable in the present case, cannot be a decisive factor in the consideration of the question presented on this appeal, but that fact is mentioned here as an "ad hominem" aside to indicate that the appellant, Bennett, could hardly have been surprised or disadvantaged unfairly when the insurance company declined to defend him in the action brought by the Alexanders.
Our conclusion is that the final decree appealed from must be and it is affirmed.
Affirmed.
STURGIS and WIGGINTON, JJ., concur.