196 So.2d 219 (1967)
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,
v.
ICARD, MERRILL, CULLIS & TIMM, P.A. d/b/a Icard, Merrill, Cullis & Timm, Appellee.
No. 7270.
District Court of Appeal of Florida. Second District.
March 8, 1967.
Rehearing Denied April 3, 1967.
*220 William T. Keen, of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellant.
Icard, Merrill, Cullis & Timm, Sarasota, for appellee.
PIERCE, Judge.
Appellant insurance company, hereinafter referred to as St. Paul, appeals a summary final judgment entered against it in favor of appellee, hereinafter referred to as Icard, holding St. Paul to be liable upon an indemnity insurance policy and adjudging damages in favor of Icard in the sum of $1,009.75.
Icard, on January 20, 1966, filed suit in the Sarasota County Circuit Court, alleging that St. Paul had theretofore entered into a Lawyer's Professional Liability Contract with Icard, whereby St. Paul had agreed "to pay on behalf of the Insured (Icard) all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer * * *." (Emphasis supplied). Icard was a prominent law firm, engaged in the general practice of law in Sarasota. The amended complaint alleged that on January 9, 1963, while the above indemnity insurance was in force, Icard was sued in the U.S. District Court for the Middle District of Florida, Tampa Division, by one Mrs. Luise S. Cristiana, as an outgrowth of their previous legal representation of Mrs Cristiani; that Icard complied with all conditions precedent contained in the policy, but that St. Paul failed or refused to defend said suit; that Icard was therefore forced to retain the services of another attorney in defense of the Cristiani suit, which suit was subsequently dismissed and the dismissal affirmed on appeal; and that because thereof Icard had expended costs, including attorney's fees, both in the Cristiani suit and also in the instant suit.
By answer, St. Paul admitted all of the material averments of the amended complaint except that it denied that Icard was covered by the indemnity policy in defending the Cristiani suit.
Both Icard and St. Paul filed respective motions for summary judgment based on the pleadings of the parties, and upon hearing the Circuit Judge granted Icard's motion and denied St. Paul's motion, and entered judgment for Icard against St. Paul in the said sum of $1,009.75, the amount agreed upon by the parties as damages in the event damages should be adjudged.
The sole point relied upon by St. Paul, both in the trial Court and this Court, and which is the crux of this case, pertains to that provision of the policy, under the head of "Exclusions," which says: "This Policy Does Not Apply: * * * to any dishonest, fraudulent, criminal or malicious act or omission of the Insured, any partner or employee * * *." St. Paul contends that the allegations of the complaint in the Cristiani suit fell within the purview of the aforesaid exclusionary provision, in that the "acts or omissions" of Icard in representing Mrs. Cristiani were either "dishonest, fraudulent, criminal or malicious." This necessarily calls for examination of the Cristiani complaint filed against Icard.
The Cristiani complaint was six pages long, signed by Mrs. Cristiani only, with no attorney at law mentioned therein or signing the same, and we will not presume to review it in detail. It abounds in unnecessary *221 prolixity, is replete with unsupported accusations and innuendos, and is patently the product of a bitter and vituperative bent of mind. It is rife in conclusions of unsavory and unprofessional conduct on the part, not only of Icard, but also of her husband, Daviso R. Cristiani, and her husband's lawyer, Richard K. Doyle, and also two other members of the Sarasota bar, George Dietz and Charles Early. The members of the Icard law firm who were the particular objects of her castigation were Messrs. William W. Merrill and Curtis J. Timm, who, together with Mr. Doyle, were actually, in her language, "tools of the local bar association" in a conspiracy to punish her and "obtain revenge" against her "by impeding, hindering, obstructing and defeating the due course of justice and equal protection of the law." Thus she extended her area of rancorous maledictions to encompass the entire local bar, of which Mr. Icard was President of the Sarasota County Bar Association.
Separating the chaff from the wheat, or more precisely filtering the "facts" from the redundant morass of invectives, what Mrs. Cristiani was apparently trying to say in her complaint was that she employed Icard's firm to represent her in a suit against her husband for "property disposition, alimony, support money and custody" and that in the process of such representation her attorneys "conspired" with her husband and her husband's attorney to "force" her to agree to an unfavorable "dictatorial settlement" to forfeit for herself and son "all claim to alimony and support money" and "to agree to no decision on custody"; that in furtherance thereof the "conspirators" agreed among themselves to delay prosecution of said suit so that the mortgage payments on the property she owned jointly with her husband would become delinquent and "thus apply foreclosure pressure" to "force" her to agree to the supposed settlement; that she was delayed in receiving temporary support payments of $250.00 per month, thereby being without funds to "meet said mortgage payments and thus prevent foreclosure"; that the "conspirators" contrived to suppress evidence unfavorable to her husband or favorable to her; that her attorneys "aided" in having her served with process in the mortgage foreclosure suit after she had successfully evaded such service "for months following filing suit"; that she endeavored to have her attorneys desist from representing her in the foreclosure suit and to concentrate on her divorce action; and that finally the "conspirators" agreed that her attorneys "should break their employment agreement and * * * have now flatly refused to carry out the terms of the employment agreement." She accused "certain local attorneys including Charles E. Early" of having hostility and ill will toward her "because of prior litigation ending unfavorably to them." She claimed damages "amounting to $100,000.00 to date," including "approximately $6000.00 in delinquent alimony and support payments; approximately $6,000.00 in attorneys fees in my divorce case; approximately $2,000.00 in attorneys fees in connection with the foreclosure; approximately $50,000.00 on said jointly owned property; and other losses that have not fully accrued at the present time."
It is admitted by St. Paul that the Cristiani suit "was subsequently dismissed and the dismissal was thereafter affirmed on appeal."
St. Paul contends however that, in the light of the Cristiani complaint, Icard had no claim under the policy to be defended by St. Paul, because "the acts or omissions" of Icard in the alleged representation of Mrs. Cristiana were "dishonest, fraudulent, criminal or malicious" and therefore were excluded from the coverage of the policy. We cannot agree, and are of the view that the able Circuit Judge was correct in granting summary judgment to Icard.
A few preliminary observations may be helpful. The provisions of a policy of insurance which tend to limit or avoid *222 liability are to be construed most liberally in favor of the insured and strictly against the insurer. Poole v. Travelers Ins. Co., Fla. 1937, 130 Fla. 806, 179 So. 138; National Automobile Insurance Association v. Brumit, Fla. 1957, 98 So.2d 330. General allegations of conspiracy are inadequate; the allegations must be clear, positive and specific. Gair v. Lockhart, Fla. 1950, 47 So.2d 826; In re: Ruch's Estate, Fla. 1950, 48 So.2d 289; Renpak, Inc. v. Oppenheimer, Fla.App. 1958, 104 So.2d 642.
Even statements of fact made in a pleading filed in a law suit, however false and malicious they may be, are considered to be absolutely privileged under the law of libel, so long as they are reasonably connected with or material to the "cause in hand." Myers v. Hodges, 1907, 53 Fla. 197, 44 So. 357; Fisher v. Payne, 1927, 93 Fla. 1085, 113 So. 378; Goodman v. Goldstein, Fla.App. 1962, 145 So.2d 882. And such absolute privilege in judicial proceedings obtains to defamatory testimony by a witness, though given maliciously and with knowledge of its falsity, so long as it is "material to the inquiry." State v. Tillett, Fla.App. 1959, 111 So.2d 716. These observations are pertinent because they point up the proposition that total reliance upon any statement or accusation oral or written in a judicial proceeding is hardly warranted or justified. It is, at best, most risky business.
Here, in the case sub judice, St. Paul elected to rely upon derogatory statements and allusions which were not even factual, but patently on their face conjectural conclusions. Mrs. Cristiani's complaint did not even bear the imprimatur of any legal counsel's signature or even her own sworn verification. Indeed, some of her meandering allegations are inconsistent and irreconcilable with known facts; others are refuted by her own document. For instance, she alleges that Icard exacted a $1,000 retainer fee from her "for the prosecution of a divorce suit" whereas she says Icard was employed "for separate maintenance apart from divorce." This is directly impugned by the employment contract letter of December 15, 1960, copy whereof was attached to her complaint, wherein it is plainly recited that the Icard firm was employed "to bring a divorce action against your husband." Also, one of the main objectives apparently sought by Mrs. Cristiani was recovering the "absolute fee ownership of all real property owned either individually by your husband or jointly with him," which ordinarily a Court would not go into in a separate maintenance proceeding, but only in a divorce case.
Numerous similar instances could be recounted but it would be redundant here. Suffice to say that Mrs. Cristiani's complaint, as she filed it in the Federal Court, was grossly insufficient in its averment of facts, as distinguished from conclusions, upon which to base a justifiable or permissible reliance on the part of St. Paul that Icard, in their dealings with Mrs. Cristiani, had handled her legal matter in any "dishonest, fraudulent, criminal or malicious" manner so as to exclude coverage under the policy. See Renpak, Inc. v. Oppenheimer, supra; In re: Ruch's Estate, supra; National Automobile Insurance Association v. Brumit, supra, and Lee v. Aetna Casualty & Surety Co., CA2 1949, 178 F.2d 750. The cases of Consolidated Mutual Insurance Company v. Ivy Liquors, Fla. App. 1966, 185 So.2d 187, and Bennett v. Fidelity and Casualty Company of New York, Fla.App. 1961, 132 So.2d 788, are readily distinguishable on the facts.
The law seems to be that, even if some of the acts of the insured were within the category of the exclusionary clause of the policy, yet if there were other acts of the insured relied upon which did not measure up in culpability to such excluded acts, but at best constituted only malpractice, the insurer would be obligated to defend and indemnify the professional insured. And this is exactly what the able trial *223 Judge held in the instant case. The summary final judgment stated that the Court had "determined that the complaint" in Mrs. Cristiani's suit contained "allegations of conduct not excluded by the insurance contract."
There was no occasion for a trial or taking of testimony in the Court below. The issue was simple and one of law: whether the unsupported statements in Mrs. Cristiani's Federal Court complaint contained sufficient facts to legally warrant St. Paul in refusing to defend Icard's interests in the suit brought by her, within the terms of Icard's policy of insurance. The lower Court held they did not, and we agree.
The judgment appealed from is 
Affirmed.
ALLEN, C.J., and LILES, J., concur.