199 So.2d 529 (1967)
FINANCIAL FIRE & CASUALTY COMPANY, Appellant,
v.
Mary L. CALLAHAM, Appellee.
No. 7373.
District Court of Appeal of Florida. Second District.
May 26, 1967.
Rehearing Denied June 29, 1967.
*530 Allen, Dell, Frank & Trinkle, Tampa, for appellant.
Pope & Burton, Tampa, for appellee.
MAXWELL, OLIVER C., Associate Judge.
This is an appeal from a summary judgment entered in behalf of the plaintiff-insured upon complaint, motion for summary judgment by both parties, affidavits and counter-affidavits, in a suit for declaratory decree to construe a comprehensive liability insurance policy issued to appellee by appellant. The policy, a copy of which is attached to the complaint, listed the named insured and address as: "Mary L. Callham d/b/a Camp Whip-O-Will and Carroll Wood Kindergarden, 10417 Lake Carroll Way, Tampa, Florida." Under locations of all premises owned, rented or controlled by named insured was "(1) Camp Whip-O-Will, Pasco County, Florida, (2) Carrollwood Kindergarden, Tampa, Florida." The policy stated that only those coverages or charges were available and advanced premium charges were made for the following coverages: (A) "Bodily injury liability  Automobile, $171,00; (B) Bodily injury liability  Except Automobile, $242.00; (C) Property Damage Liability  Automobile, $48.00; (d) Property Damage Liability  Except Automobile, $21.00;" and under the title "Form numbers of endorsements attached to policy at issue (listing several numbers) $48.00, making the total advance premium $530.00. The following provisions were contained in the section entitled "Insuring Agreements":
"Coverage B  Bodily Injury Liability  Except Automobile; To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.
"Coverage C  Property Damage Liability  Automobile: To pay on behalf of the *531 insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.
"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy, the company shall:
(a) Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."
The policy was dated June 15, 1964. An endorsement was issued on August 1, 1964, Endorsement BE 16a reads as follows:
"In consideration of a return premium of $135.88, it is hereby understood and agreed the 1949 International School Bus is deleted from coverage under the captioned policy.
"It is further understood and agreed Day Camps, Saddle Animals and Swimming Activities are deleted from the OL&T Schedule (L-6973A).
"All other terms and conditions of this policy remain unchanged."
After the last mentioned endorsement was issued, certain horses kept by the appellee-insured permanently on the premises in Pasco County escaped the enclosure in which they were maintained and were struck on the highway by two different motor vehicles, as a result of which two separate law suits were filed against appellee claiming damages for personal injuries. Appellant-insurer refused to defend the cases and denied coverage under the insurance policy and appellee filed suit for declaratory decree.
The plaintiff (appellee) filed motion for summary judgment supported by her affidavit.
Appellant also filed motion for summary judgment supported by affidavit of the agent who handled the transaction and appellee filed a counter-affidavit.
The appellee's affidavit discloses that she rented, leased or purchased certain saddle horses for the camping season only and that she owned and maintained on the premises at all times several horses for nature study which were kept at the Pasco premises year around regardless of the day camp season which was known to the insurer. This portion of the affidavit is not contradicted. Appellee states that she wished year around coverage on the Pasco property, as distinguished from the camp activities, and relied upon the superior knowledge of the insurer to furnish her the same. While there may be inferences of a conflict in her specific language with the insurer's affidavit on this point, the insurer's affidavit nowhere specifically states that the appellee sought a cancellation of the coverage on the Pasco property. The language in the insurer's affidavit that "following the issuance of the endorsement, there was no coverage remaining for the camp premises in Pasco County" (italics supplied) is patently a mere interpretation of the affiant unconnected with any sworn statement of what the appellee told him. In other words, it is simply the insurance agent's interpretation of the policy.
Upon this record the trial judge entered a summary judgment for the appellee holding that there was ambiguity in the exclusionary endorsement, when considered in connection with the policy as a whole. The Court pointed out that the appellee was not skilled or learned in insurance matters, explained her entire operation to the agent of the insurance company and *532 relied upon his good judgment in purchasing insurance coverage. The Court also stated:
* * * "The Plaintiff contends that she is not skilled or learned in insurance matters and that she explained her entire operation to the agent of the insurance company and relied upon him and upon his good judgment and upon his representation in purchasing insurance coverage. There seems no logical reason why the endorsement BE 16a could not have stated in plain English that all coverage in Pasco County was terminated if that were the intention of the insurance company. A review of the entire policy casts doubt upon the theory that the insurance company intended to cancel all of the coverage in Pasco County because the actual premium paid in advance by the Plaintiff was $530.00 while the return premium on August 1, 1964, just seven weeks later, was only $135.88 and if the premises in Pasco County were to be excluded the return premium seems disproportionately small. Further, the endorsement could be read to mean that the return premium was because of the exclusion of the 1949 International School Bus which undoubtedly constituted a substantial risk since apparently it was used in connection with the operation of the day camp and probably was used to transport children. Further, while the term `saddle animals' can be interpreted to mean all types of horses, it does leave some room for argument and for ambiguity and it would appear to have been just as simple for the company to have stated that all horses would be excluded if that was what they meant. The plaintiff contends that she thought the term `saddle animals' referred to the rented saddle horses to be used in the day camp operation by the children and not to the permanent horses kept on her premises and that she understood the term `day camps' to mean the actual operation of the day camp during the period when children were coming to the camp as opposed to the premises themselves and the Court finds the Plaintiff's understanding of the contract including the endorsement reasonable. The Court does not have to adopt the position of the plaintiff in regard to her interpretation of the term `day camps' and `saddle animals' but the Court finds that the endorsement was ambiguous and did not clearly notify the insured of the limitation now attempting to be imposed by the insurance company. Because of the ambiguity as well as the fact that the insured relied upon the superior knowledge of the agent of the company and from a reading of the entire policy and the endorsements, the Court concludes that coverage did exist for the Pasco County premises and for the horses involved in the accident which are the subject of the third party suits on the date in question." * * *
The rule in construction of insurance contracts was stated by this Court in New Amsterdam Casualty Company v. Addison, Fla. App. 1964, 169 So.2d 877 as follows:
* * * "Thus, we bear in mind that in construing an insurance policy to determine the intention of the parties, a court must consider the instrument in its entirety; and, if reasonably possible, that construction should be adopted which will give effect to the total instrument and to each of its various provisions. New York Life Ins. Co. v. Kincaid, 1939, 136 Fla. 120, 186 So. 675; King v. Sturge, Fla.App. 1959, 113 So.2d 257. If the language used is clear and unambiguous, it will be accorded its natural meaning. Pafford v. Standard Life Ins. Co. of Indiana, Fla. 1951, 52 So.2d 910. The court should not extend strictness in construction to the point of adding a meaning to language that is clear. Rigel v. National Casualty Company, Fla. 1954, 76 So.2d 285. For statement of the above principles, see 18 Fla.Jur., Insurance, Sections 93 and 95, pages 86, 88 and 89.
"(5-6) Also, Florida law renders applicable to contracts of insurance the principle that, where a contract of insurance is prepared and phrased by the insurer, it *533 is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language is doubtful, uncertain, or ambiguous. Fireman's Fund Ins. Co. of San Francisco, Cal. v. Boyd, Fla. 1950, 45 So.2d 499. The general rule is that, if there are terms in an insurance policy which are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot be clearly ascertained by the application of ordinary rules of construction, these terms are to be construed strictly and most strongly against the insurer and liberally in favor of the insured so as to effect the dominant purpose of payment to the insured. Beasley v. Wolf, Fla.App. 1963, 151 So.2d 679. The accepted rationale back of this rule is that insurance policies are prepared by experts in this complex area, and the intricate interplay of their various provisions is difficult for a layman to understand. The Praetorians v. Fisher, Fla. 1956, 89 So.2d 329. Where there are two interpretations which may fairly be given to language used in a policy, the one that allows the greater indemnity will govern. Howard v. American Service Mut. Ins. Co., Fla.App. 1963, 151 So.2d 682. Statement of these principles may be found in 18 Fla.Jur. Insurance, sections 94 and 95, pages 86, 87, 88, and 89." * * *
The appellant contends that the exclusionary endorsement was unambiguous and clearly eliminated any coverage of the Pasco County premises. Upon the record in this case and the law of construction enunciated by this Court we cannot agree with this contention but conclude that the trial court properly held there was ambiguity and that the interpretation giving the greater indemnity should govern.
The second point raised by appellant, namely, that there was a genuine issue of material fact is not supported by the record. Nowhere is it unqualifiedly stated in appellant's supporting affidavit that there was any discussion or agreement between the appellee and the insurance agent that the Pasco County premises should be eliminated from the coverage of the policy. Statements in the agent's affidavit with respect to coverage on the premises are merely expressions of the agent's interpretation of the policy.
The judgment appealed from is affirmed.
ALLEN, C.J., and PIERCE, J., concur.