252 So.2d 248 (1971)
COMMERCE NATIONAL BANK IN LAKE WORTH, Appellant,
v.
SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation, Appellee.
No. 70-360.
District Court of Appeal of Florida, Fourth District.
July 22, 1971.
Rehearing Denied September 28, 1971.
John F. Law, Jr., of Ryan, Taylor, Booker & Law, North Palm Beach, for appellant.
John R. Beranek, of Jones, Paine & Foster, West Palm Beach, for appellee.
PER CURIAM.
Affirmed.
CROSS and OWEN, JJ., concur.
MAGER, J., dissents, with opinion.
MAGER, Judge (dissenting):
With all due regard to my esteemed colleagues I must respectfully dissent. It is my humble opinion that the majority has overlooked certain basic principles applicable to the construction of contracts of insurance the most significant of which is that such contracts must be construed liberally in favor of the insured and strictly against the insurer. The facts giving rise to the instant appeal and the underlying reasons for my dissent are hereinafter set forth.
A summary judgment was entered against Commerce National Bank in Lake Worth, plaintiff-appellant, in favor of Safeco Insurance Company, defendant-appellee in a suit seeking the recovery of costs incurred by plaintiff in its defense of a suit which plaintiff alleges defendant was required to defend.
The plaintiff (insured) contracted with defendant (insurer) for a special multiperil insurance policy which contained a personal injury liability coverage endorsement as hereinafter set forth:
"PERSONAL INJURY LIABILITY
 COVERAGE ENDORSEMENT
"INSURING AGREEMENTS
I. PERSONAL INJURY LIABILITY COVERAGE

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury sustained by any person or organization and arising out of the following hazards in the conduct of the named insured's business in connection with the premises designated in the declarations of the policy and this company shall defend any suit against the insured alleging such injury and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.
SCHEDULE
The insurance afforded is only with respect to such of the following hazards as are indicated by specific premium charge or charges.
HAZARDS
A. False arrest, detention or imprisonment, or malicious prosecution
B. Libel, slander or defamation of character
C. Invasion of privacy, wrongful eviction or wrongful entry" (Emphasis supplied.)
The insured was sued by a third party. The third party complaint contained some *249 20 counts and there is apparently no dispute that such complaint was within the insurance policy coverage; in fact, the insurer undertook to defend the insured against the third party.[1] As a result of such defense by the insurer the third party complaint was dismissed. Subsequently the third party complaint was amended; the insurer denied coverage and withdrew. The instant appeal is concerned with the allegations contained in the third party amended complaint, the insured alleging that the allegations therein were within the insurance policy coverage. The third party complaint, instituted by an automobile dealer against the insured, sought damages resulting from the insured's repossession of a number of automobiles which the third party alleged it owned and that insured had "illegally seized" from the premises of the third party complainant. The third party complainant apparently borrowed substantial sums of money from the insured, such loan apparently being secured by the various automobiles. The third party amended complaint which was based upon the same set of facts out of which the original complaint arose contained only three basic allegations as distinguished from the 20 allegations set forth in the original complaint. See footnote 1, supra. Count 1 of the third party amended complaint alleged, inter alia, that the insured "converted to its own use more than 60 automobiles belonging to the plaintiffs and located on the premises owned by the plaintiffs"; Count 2, inter alia, alleged that the insured "descended upon the place of business of these plaintiffs * * * and illegally, unlawfully, wilfully, deliberately and with malicious intent to destroy the plaintiffs' business and community reputation, seized, took and converted from these plaintiffs' place of business a number of automobiles owned by the plaintiff * * *"; Count 3, inter alia, alleged that the insured "by its agents, employees and officers wrongfully broke and entered upon the premises owned and in possession of the plaintiffs, and took and carried away in excess of 60 automobiles, the property of the plaintiffs * * * and converted and disposed of said goods to its own use * * *". (Emphasis supplied.)
There is considerable discussion regarding the insured's failure in the action below to attach a copy of the third party's amended complaint to its pleading, the insurer alleging in substance that it was entitled to a summary judgment because of this omission. The insurer's position is, basically, that inasmuch as it undertook to defend the original third party complaint that as a matter of law it was entitled to a summary judgment because the insured's pleadings and cause of action below were not predicated upon the third party's amended complaint; and, furthermore, that the third party's amended complaint on its face was outside the insurance policy coverage.
Rule 1.510, F.R.C.P., 31 F.S.A., provides for the granting of a summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". In support of its motion for summary judgment the insurer filed, among other *250 things, requests for admissions, appending thereto the third party amended complaint. It is clear therefore that, although the third party amended complaint was not attached to the insured's pleadings below, it was before the court for its consideration; more pertinent, however, it was on the basis of the third party amended complaint that the insurer asserted that it was entitled to judgment as a matter of law since such third party amended complaint was alleged to be outside the insurance policy coverage.
It appears somewhat inconsistent for the insurer in support of the judgment below, on the one hand to assert as a defense the third party amended complaint, and, on the other hand, to assert the failure of the insured to sue the insurer for "failure to defend under the amended complaint". The suit below is not predicated, per se, upon the insurer's "failure to defend under the amended complaint" but rather that the insurer while the insurance policy was in force "continued to defend the lawsuit * * * and subsequently, at a later date, * * * wrongfully withdrew from the defense of this lawsuit" necessitating the insured to retain counsel to defend the suit. I do not feel that it is necessary under the facts in this case for the insured, in order to maintain its action and withstand summary judgment, to have specifically sued "upon the third party amended complaint" for it is not the function of a summary judgment to test the sufficiency of a complaint to state a cause of action but rather "to determine if there is sufficient evidence to justify a trial upon the issues made by the pleadings". (Meigs v. Lear, Fla.App. 1966, 191 So.2d 286; Connolly v. Sebeco, Inc., Fla. 1956, 89 So.2d 482; 30 Fla.Jur., Summary Judgment, p. 336.) If from a review of the pleadings (and admissions) there is no genuine issue as to any material fact the question then arises whether one party or the other should be awarded judgment as a matter of law. Humphrys v. Jarrell, Fla.App. 1958, 104 So.2d 404. Where the facts as asserted are such, if established, there could be no recovery or where the undisputed facts are such as would preclude a recovery then the question becomes one of law for the determination of the court and a proper matter for disposition by summary judgment. Greyhound Corp. v. Excess Insurance Co. of America, 5 Cir.1956, 233 F.2d 630.
If we test the insured's pleadings (without considering the third party's amended complaint) it would appear as a matter of law summary judgment for the insurer must be denied inasmuch as it is undisputed that the insurer was obligated to defend, undertook to defend but later withdrew. The insurer, however, instead of filing an answer sought to predicate its motion for summary judgment upon the third party's amended complaint, which, insurer asserted, was not within the liability insurance coverage. In effect, therefore, insurer while contending that it should have been sued upon the third party amended complaint was attempting to assert an affirmative defense in its motion for summary judgment. An affirmative defense cannot be set forth in a motion for summary judgment, such defense must be pleaded in the answer. Strahan Manufacturing Co. v. Pike, Fla.App. 1967, 194 So.2d 277; Meigs v. Lear, supra; Mark Leach Health Furniture Co. v. Thal, Fla.App. 1962, 143 So.2d 64.
Accordingly, it is my opinion that the court erred in granting summary judgment for the defendant, either considering (1) the pleadings without regard to the third party's amended complaint; or (2) the pleadings together with the third party amended complaint, the latter constituting an affirmative defense. That an affirmative defense was raised is further buttressed by the insurer's assertion that the third party action against the insured (as reflected by the third party's amended complaint) fell within one of the "exclusions" contained in the liability policy, namely, that the policy does not cover any "injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of *251 any insured" which insurer asserts was the substance of the third party action against insured.
Even assuming that the defenses raised by the insurer were properly before the trial court on summary judgment, a review of the applicable authorities leads me to the conclusion that the insurer was not entitled to a summary judgment as a matter of law.
The basic position of the insurer is that the third party complaint (as amended) is not within the coverage of the liability insurance policy and in particular is specifically excluded from such coverage. These contentions must be considered in light of the applicable rules of construction of insurance policies. If the language used in a policy is clear and unambiguous, it will be accorded its natural meaning. New Amsterdam Casualty Company v. Addison, Fla.App. 1964, 169 So.2d 877. While the court should not extend strictness in construction to the point of adding a meaning to language that is clear, Rigel v. National Casualty Company, Fla. 1954, 76 So.2d 285, a contract of insurance prepared and phrased by the insurer is, however, to be construed liberally in favor of the insured and strictly against the insurer. Financial Fire & Casualty Company v. Callaham, Fla.App. 1967, 199 So.2d 529. This is especially true as to provisions of a policy which tend to limit or avoid liability. St. Paul F. & M. Ins. Co. v. Icard, Merrill, Cullis & Timm, P.A., Fla.App. 1967, 196 So.2d 219. Where there are two interpretations which may fairly be given to language used in a policy, the one that allows the greater indemnity will govern. Howard v. American Service Mutual Insurance Co., Fla.App. 1963, 151 So.2d 682.
In addition to the foregoing principles it is a firmly established rule that an insurer's duty to defend the insured is to be determined from the allegations of the complaint filed in such action against the insured. Burton v. State Farm Mutual Automobile Insurance Company, 5 Cir.1964, 335 F.2d 317; Battisti v. Continental Casualty Company, 5 Cir.1969, 406 F.2d 1318; Bennett v. Fidelity & Casualty Company of New York, Fla.App. 1961, 132 So.2d 788; Consolidated Mutual Ins. Co. v. Ivy Liquors, Inc., Fla.App. 1966, 185 So.2d 187. See Annotation "Liability Insurer  Duty to Defend", 50 A.L.R.2d 458.
An insurer cannot refuse to defend merely because some of the allegations are within exclusionary clauses provided at least one of the allegations comes within the policy coverage. St. Paul F. & M. Ins. Co. v. Icard, supra.
The basic policy coverage in the instant situation includes "invasion of privacy, wrongful eviction or wrongful entry". Count 3 of the third party amended complaint alleged that the insured "wrongfully broke and entered upon the premises owned and in possession of the plaintiffs". Applying the aforementioned rules of construction and giving the language in the policy used its ordinary meaning, I am of the opinion that the allegations in Count 3 are clearly within the scope of the insurance policy coverage. Unquestionably the third party complaint alleges other acts, i.e., conversion of third party complainant's property; unlawful seizure.[2] Yet the law is clear that if some of the acts complained of are within the policy coverage the insurer is under a duty to defend. St. Paul F. & M. Ins. Co. v. Icard, supra; 50 A.L.R.2d 458, 506.[3]
*252 A contract should be construed to give effect to the intent of the parties. 18 Fla. Jur., Insurance, p. 83. Insured (a bank) is in the business of lending money giving rise to occasions where a borrower may be in default so that an insurer can reasonably expect instances of repossession of property as a result of such default. Similarly a bank which purchases liability insurance covering "wrongful entry" would reasonably expect such policy to cover situations where the bank must enter upon a premises for the purpose of repossession. If the provisions of the policy create the obligation to defend where there is a "wrongful entry", but such phrase is not defined, it is appropriate to give the phrase a meaning which the insured would reasonably expect (Gray v. Zurich Insurance Company, 1966, 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168). In Gray the Supreme Court of California, in recognizing the application of the doctrine of reasonable expectation to the interpretation of insurance contracts, observed at footnote 7, 54 Cal. Rptr. p. 108, 419 P.2d p. 172, as follows:
"In interpreting an insurance contract we must consider the intent and reasonable expectations of the parties in entering into the agreement. Hence, we must evaluate not only [the insurer's] contract form, but also [the insured's] knowledge and understanding as a layman and his normal expectation of the extent of coverage of the policy."
The appellant (insured) purchased insurance covering wrongful entry; the appellee (insurer) provided coverage for wrongful entry; both parties intended that wrongful entry would be covered; a complaint was filed against appellant (insured) alleging a wrongful entry. It is difficult to comprehend how, under these circumstances, an insurer can deny coverage.
Also without merit is the insurer's assertion that the exclusionary language contained in the policy abrogates the insurer's liability and duty to defend. The insurer contends that the policy coverage is not applicable to an "injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge and consent of any insured". The insurer has determined that the acts of wrongful entry and conversion as alleged in the third party amended complaint are violations of penal statutes relating to trepass and larceny of an automobile, citing Florida Statutes 811.20, 821.18 and 821.38, F.S.A. If insurer's contentions are correct then the language in the exclusionary clause would probably negate many if not all those perils specifically insured against. For example, the insured peril "false imprisonment" is made a crime under Section 805.01; libel is made a crime under Section 836.01. I submit that this contention is untenable. A long line of cases establish that the policy of insurance, like other contracts, must be liberally construed in favor of the insured so as not to defeat, without a plain necessity, the claim to the indemnity which the policy protects. See National Surety Co. v. Williams, 1917, 74 Fla. 446, 77 So. 212. Where there are conflicting clauses in an insurance policy, the one which affords the most protection to the insured will control. See Queen Insurance Co. v. Patterson Drug Co., 1917, 73 Fla. 665, 74 So. 807, L.R.A. 1917D, 1091. New York Life Insurance Co. v. Bird, 1943, 152 Fla. 532, 12 So.2d 454. See also: Fischer v. Jefferson Insurance Company, Fla.App. 1963, 156 So.2d 777; St. Paul F. & M. Ins. Co. v. Icard, supra; National Automobile Insurance Ass'n v. Brumit, Fla. 1957, 98 So.2d 330; Carter v. American Fire and Casualty Company, Fla.App. 1969, 219 So.2d 462 Rivers v. Conger Life Insurance Company, Fla.App. 1969, 229 So.2d 625. (Emphasis supplied.)
*253 In Sommer v. New Amsterdam Casualty Company, D.C.E.D.Mo. 1959, 171 F. Supp. 84, the court considered and rejected a contention similar to that of the insurer. In that case Sommer secured malpractice insurance under the terms of which the company would defend any suit alleging injury arising out of malpractice, error or mistake "even if such suit is groundless, false or fraudulent"; the policy contained an exclusion making it inapplicable "to injury arising out of the performance of a criminal act * * *". A suit had been filed against Sommer charging him with an assault in the performance of his professional capacity, to wit, placing the complainant in a sanatorium for the mentally ill. The court held:
"Defendant's contention for summary judgment is bottomed upon the exclusion feature of the policy above quoted, to wit, that the policy does not apply to injury arising out of the performance of a criminal act. Certainly an insurance company has a right to interpret its policy and determine whether it will or will not defend or whether it will or will not pay. Such decision, however, is an action by the company and constitutes its interpretation of its own policy. But just as certainly, if the company makes the decision to neither defend nor pay, such decision is not binding upon courts. For, when the policy comes into question upon a suit by the insured against the company, then the legal issue arises whether the facts, regardless of how the insurance company interpreted those facts, do or do not require defense, payment or both.
"* * *
"The whole theory and philosophy of malpractice insurance liability embraces the theory of defending the physician charged by a patient. The insurance company knows when it writes its policy that a suit for malpractice might be groundless and, therefore, it tells the doctor in his policy `we will defend you even though such charges may be false, groundless or fraudulent'. See Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., 8 Cir., 1954, 214 F.2d 418, loc. cit. 422.
"The defendant is saying, `because Littleton alleged an assault, and because the word "assault" connotes a crime, we did not owe the insured either the duty to defend or to pay.' But, how can it be determined whether there was or was not an assault? The defendant says that they investigated and determined that. It seems most needless to remind them, but apparently they need reminding, that such investigation might suffice for their determination of whether to defend or pay, or both, but such determination when suit on the policy is involved must be dependent upon the facts and whether or not those facts require their defense, or payment, or both.
"* * *
"The word `malpractice' includes the performance of criminal acts. Bakewell v. Kahle, 1951, [125 Mont. 89] 232 P.2d 127; Cramer v. Price, 1948, 84 Ohio App. 255, 82 N.E.2d 874; Physicians' and Dentists' Business Bureau v. Dray, 1941, 8 Wash.2d 38, 111 P.2d 568. The words `error' and `mistake' could also embrace an assault.
"It has been held that provisions in an insurance policy which attempt to exempt the company from risk on account of certain conditions, which in fact exist and are known to insurer and which provisions, if given effect, render the policy inoperative at its inception, such provisions are invalid. See Andrus v. Maryland Casualty Co., 1904, 91 Minn. 358, 98 N.W. 200. In other words, can the defendant offer plaintiff a policy to protect him from damages for malpractice (which embraces an assault) in one breath, and then in the other breath turn around and exempt assaults? If that be the case what have they given to the insured?

*254 "Certainly the defendant should not receive a premium for a policy for malpractice and then turn around and exclude the very thing for which it took the fee.
"As was said in the case of Shehee v. Aetna Casualty & Surety Co. [D.C., 122 F. Supp. 1], supra, at loc. cit. 6, `In interpreting private insurance contracts, * * *, the universal rule is that courts will give a liberal construction to policy provisions to effect coverage, where a narrow one would lead to manifest injustice. An interpretation which entirely neutralizes one provision of the policy should not be adopted if the contract is susceptible of another which gives effect to all provisions and is consistent with the general intent.' See also Heyward v. American Casualty Co. of Reading, Pa., D.C., 129 F. Supp. 4, loc. cit. 9 [7], and loc. cit. 11." (Emphasis supplied.)
Similarly, see also Horton v. American Home Assurance Company, Fla.App. 1971, 245 So.2d 136.
The phrase "wrongful entry" just as the phrase libel, slander, or false imprisonment, may include criminal acts; yet these facts were reasonably known to the insurer and an insured can reasonably expect that coverage was intended to apply. Otherwise what has the insured purchased if the insurer can invoke another provision of the policy which completely neutralizes and abrogates the very acts intended to be covered. The phrase "wilful violation of a penal statute or ordinance" is undefined in the policy and because of its very ambiguity and uncertainty must not be construed in such a manner as to defeat the object of the insurance policy; it must be construed strictly against the insurer and liberally in favor of the insured.[4] It might be noted, the fact that insured successfully defended the suit against the third party would not only negate the assertion of "a wilful violation of a penal statute or ordinance" but additionally would support the conclusion that the third party suit was "groundless, false or fraudulent" within the meaning of the coverage.
Although the insured was successful in its defense thereby determining the insurer's ultimate liability to pay damages, this does not obviate the insurer's duty to have defended in the first instance. (See 52 A.L.R. p. 475; Appleman on Insurance Law & Practice, Vol. 7A, p. 436). An insurer who believes there is no policy coverage and who refuses to defend awaiting a determination of his obligation in subsequent proceedings against it, acts at its peril and if it guesses wrong it must bear the legal consequences of its breach of contract, Appleman on Insurance Law & Practice, p. 473, and "a wrong guess by the insurer would deprive the insured of his right to have such actions defended on his behalf by the company".[5]
*255 While I am of the opinion, in light of the foregoing, the terms of the policy clearly impose a duty and obligation on the insurer, whatever doubt and ambiguity that exists with respect to the definition of "wrongful entry" or the application of the exclusionary clause must be resolved in favor of the insured and against the party "who drew the contract or chose the language used". 18 Fla.Jur., Insurance, p. 86; Financial Fire & Casualty Co. v. Callaham, Fla.App. 1967, 199 So.2d 529. See also Swigert v. American Bankers Insurance Co., Fla.App. 1971, 247 So.2d 737.
Accordingly, the order of the trial court should be reversed.
NOTES
[1] The third party complaint alleged various causes of action outlined in appellant's brief at pages 5-6, as follows: (1) illegal conversion, (2) trespass quare clausem fregit, (3) breach of contract, (4) breach of contract, (5) unlawful charges against plaintiff's account, (6) breach of contract, (7) illegal seizure of property, (8) breach of reserve agreement, (9) illegal closing plaintiff's business, (10) wrongfully putting plaintiff out of business, (11) illegal conversion, (12) impairment of contract, (13) wrongfully caused calumny, derogation and bad will, (14) wrongfully sued plaintiff, (15) slander of real property title, (16) illegal conversion, (17) impairment of contract, (18) wrongfully cause calumny, embarrassment, derogation and bad will, (19) wrongfully sued plaintiff, (20) breach of the tenor of an agreement. See also Note 2, infra.
[2] It should be noted that the original third party complaint which insurer admitted it was required to defend contained an allegation against the insured of: "illegal conversion". Compare this language with the third party amended complaint alleging that insured "illegally * * * converted" certain property. It is difficult to distinguish between the acknowledged liability of the insured under the original third party complaint and the contested liability under the third party amended complaint. See 44 Am.Jur.2d Insurance § 1553, discussing estoppel against insurer to raise defense of noncoverage.
[3] The insurer is obligated to defend until it could "at least confine the claim to a recovery that the policy did not cover", 50 A.L.R.2d 507, citing the opinion of Judge Learned Hand in Lee v. Aetna Casualty & Surety Co., 2 Cir.1949, 178 F.2d 750.
[4] It would seem in order for a wilful violation of a penal statute or ordinance to have been committed by the insured there must have been conviction and an adjudication of guilt by a court of competent jurisdiction which is lacking in the case sub judice. All we have here is the insurer's own interpretation of its own policy. (See Sommer v. New Amsterdam Casualty Company, supra.)
[5] In Country Mutual Insurance Company v. Murray, 1968, 97 Ill. App.2d 61, 239 N.E.2d 498, the court set forth a course of action to be followed by an insurance company in a case in which the policy is designed to cover the type of claim involved and wherein an insurer is presented with a claim that may or may not be covered by the policy. If the insurer refuses to provide its insured an unrestricted defense yet desires to ultimately urge exclusionary coverage defenses it must (1) secure a declaratory judgment of its rights and obligations, while defending its potential insured on a reservation of rights, or (2) defend its potential insured on a reservation of rights and adjudicate its coverage in a supplemental suit. If it elects to defend under a reservation of rights, it must continue such defense until there is a final determination that the claim is not covered by the policy. If and when that becomes certain the insurer may turn back the defense.