FRANK D. UPCHURCH, Jr., Judge.
Appellants, Roy and Mary Zimmer, appealed a declaratory judgment of the Circuit Court for Orange County interpreting the language of an endorsement entitled Florida Mandatory Endorsement (Sinkhole Collapse Coverage) in a homeowner’s policy issued by appellee, Aetna Insurance Company. The Zimmers made a claim on their policy. Aetna then brought suit for interpretation of the applicability of the endorsement. The Zimmers counterclaimed to recover. The lower court bifurcated the trial and proceeded first to a non-jury determination of coverage afforded by the policy. Disputed issues of fact as to the cause of the Zimmers’ loss, whether any damage occurred within the effective dates of coverage and the amount of such damage, remained to be determined by a later jury trial following an interpretation of the endorsement as affording coverage.
The lower court concluded that the type of loss claimed by the Zimmers was not within the coverage afforded by the Aetna policy. We disagree and reverse.
The Florida Mandatory Endorsement was included in the policy pursuant to section 627.351(2), (3), Florida Statutes (1979), which provides:
Agreements may be made among property insurers with respect to the equitable apportionment among them of insurance which may be afforded applicants who are in good faith entitled to, but who are unable to procure, such insurance through ordinary methods, and such insurers may agree among themselves on the use of reasonable rate modifications for such insurance. Such agreements and rate modifications shall be subject to the applicable provisions of this chapter.
* ******
It is the finding of the legislature that: (a) Due to the lack of windstorm insurance coverage in certain areas, economic growth and development is being deterred or otherwise stifled in said areas, mortgages are in default, and financial institutions are unable to make loans.
(b) Other areas of the state may be similarly affected in the future.
In November, 1969, Rules of the Insurance Commissioner were adopted providing for a pool concept or participation plan whereby insurers were required to provide coverage for insurable sinkhole losses if requested by the landowner. By Rule No. 4-23.07, Florida Administrative Code, the Commissioner defined “sinkhole collapse” as follows:
Direct loss by sinkhole collapse means actual physical damage to the property covered arising out of or caused by sudden settlement or collapse of the earth supporting such property only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formation.
The wording of the endorsement was almost identical.[1]
Appellants contend that the lower court erred in construing Aetna’s policy as excluding sinkhole loss when the earth supporting their home did not “suddenly” settle or “suddenly” collapse.
Section 627.351(2), Florida Statutes (1979), did not specify that the loss be “sudden” but rather, mandated coverage for insurable sinkhole losses. The word “sudden” first appears in Rule No. 4-23.07, Florida Administrative Code. The rule was intended to carry out the legislative purpose, to cover insurable sinkhole losses, and un *994 less the rule is clearly contradictory, we must urge a construction of the rule which will carry out this legislative purpose. Calio v. Equitable Life Assurance Society of United States, 169 So.2d 502 (Fla. 3d DCA 1964).
Sinkhole losses did not prove to be burdensome to the insurance industry. An order of the Insurance Commissioner dated April 26, 1973, recited that during the first three years of the plan for equitable apportionment of losses between insurers, there had not been a single loss. The order concluded that the administrative costs of the plan were disproportionately excessive in relation to losses incurred or anticipated.
The settlement, or collapse as used in the definition, is limited to those caused by the collapse of subterranean voids created by the action of water on limestone or similar rock formation. The time required for action of water on rock to create a void, when measured in terms of the earth’s age may be a “sudden” process but in terms of a man’s lifetime,.the progress of such process is hardly capable of discernment. Aetna urges a construction which would limit coverage only to those situations where the collapse would occur instantaneously. The term “sudden” as defined in Black’s Law Dictionary 1284 (5th ed. 1979) is:
Happening without previous notice or with very brief notice; coming or occurring unexpectedly; unforeseen; unprepared for.
In the case before us, the damage has been occurring in a continuous, inexorable manner which will lead ultimately to complete destruction of the Zimmers’ house. No statistics were developed at the trial below as to the number of sinkholes which gradually manifest themselves on the earth’s surface and those which “instantaneously” appear when the ceiling over a large void in the subterranean layer, no longer able to support the load above, falls. But for each one of the latter, there must be many wherein the voids are much smaller but nonetheless fall, causing collapse of the overlying earth and damage or destruction of any structure situated thereon. It is especially significant that the Legislature included in addition to the word collapse, the word “settlement.” “Settlement” is defined in Webster’s Third New International Dictionary 2079 (3d ed. 1961) as:
A gradual sinking of a structure, either by the yielding of the ground under the foundation or by the compression of the joints or material.
“Settlement,” by its inclusion in the statute, clearly reflects the legislative purpose not to limit losses to those of a “sudden, overnight nature, the type that amounts to an immediate catastrophe” as contended by Aetna, but also to include those where the loss occurs over a more extended period. The word “sudden” when used in this context would limit claims to those losses which occur unexpectedly, without previous notice and which are unforeseen and unprepared for. To limit the policy to the rare circumstance urged by Aetna would defeat the claimed protection which is behind the purpose of having the insurance policy. Massachusetts Indemnity & Life Ins. Co. v. Schupper, 301 So.2d 789 (Fla. 3d DCA 1974); George v. Stone, 260 So.2d 259 (Fla. 4th DCA 1972). Where there are two interpretations which may be fairly given language in a policy, the one that allows the greater protection for the insured will govern. Financial Fire & Casualty Co. v. Callaham, 199 So.2d 529 (Fla. 2d DCA 1967).
We therefore reverse the judgment of the lower court and hold that the Sinkhole Coverage Endorsement of Aetna’s policy covers those losses occurring because of the settlement or collapse resulting from subterranean voids created by the action of water on limestone or similar rock formations which are unforeseen, occur unexpectedly, without notice and for which the homeowners are unprepared.
We note from the record there was some evidence that the damage to the Zimmers’ home was manifest before the policy was obtained and that sinkhole collapse was not the cause of that damage. Those issues as well as the extent of the Zimmers’ damage were left by the lower court for later determination and as a consequence were not *995 considered in our analysis of the language of the policy.
REVERSED.
DAUKSCH, C. J., and ORFINGER, J., concur.

. This policy insures against direct loss to the property covered caused by: Sinkhole collapse, meaning only actual physical damage to such property arising out of, or caused by sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations. This policy does not insure against loss caused by abandonment of the property covered. Any provision in this policy which excludes loss by “earth sinking” is amended to exclude loss by “earth sinking other than sinkhole collapse.” All other terms and conditions of this policy remain unchanged.