**TIMBER PINES PLAZA, LLC, Plaintiff,**

v.

**KINSALE INSURANCE COMPANY, Defendant.**

**Case No: 8:15-cv-1821-T-17TBM**

United States District Court, M.D. Florida, **Tampa Division.**

Signed June 28, 2016

John E. Thomas, Erik Carlton Nutter, Jr., Barbara M. Hernando, at the law firm of Thomas, Nutter, Thomas Matthew L. Wilson, at the law firm of Burnett, Wilson, Reeder, Tampa, FL, for Plaintiff.

Sina Bahadoran, Michael D. Ford, at the law firm of Hinshaw & Culbertson LLP, Coral Gables, FL, for Defendant.

## ORDER

ELIZABETH A. KOVACHEVICH, UNITED STATES DISTRICT JUDGE

This cause came before the Court pursuant to . *Kinsale's Motion to Dismiss Amended Complaint with Prejudice and Incorporated Memorandum of Law* (Doc. No. 21) (the **"Motion to Dismiss"**) filed by the Defendant, Kinsale Insurance Company (**"Kinsale"** or the **"Defendant"**), and the *Plaintiff's Response and Incorporated Memorandum of Law to Defendant's Motion to Dismiss Amended Complaint with Prejudice* (Doc. No. 26) (the **"Response"**) filed by the Plaintiff, Timber Pines Plaza, LLC (**"Timber Pines"** or the **"Plaintiff"**). Also before the Court are motions for judicial notice (Doc. No. 30) (the **"Motion for Judicial Notice"**) and to strike expert testimony and extrinsic evidence (Doc. Nos. 27 & 31) (the **"Motions to Strike"**) filed by the Defendant, and the responses thereto filed by the Plaintiff (Doc. Nos. 35, 36, & 37). For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, and the Motions to Strike and Motion for Judicial Notice are **GRANTED IN PART AND DENIED IN PART**.

## I. Introduction

The primary issue raised by the Motion to Dismiss is whether the Plaintiff must plead that it suffered losses as a result of a sudden sinking or collapse to recover under its policy of insurance (the **"Policy"**) with the Defendant. The Policy provisions at issue state that the Defendant "will not pay for loss or damage caused directly or indirectly by . . . . Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty." "Sinkhole collapse," in turn, is defined as "the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite." Upon review, the Court believes that the terms "sinkhole collapse" and "sudden sinking or collapse" require the Plaintiff to allege losses caused by an abrupt or sudden rate of collapse. Here, the Plaintiff does not allege that it suffered losses due to a "sudden sinking or collapse." Thus, the Plaintiff has failed to state a claim upon which relief can be granted and, as a result, the Amended Complaint (defined below) must be dismissed.

## II. Background

The Plaintiff commenced this case on August 5, 2015 by filing a *Complaint and Jury Trial Demand* (Doc. No. 1) (the **"Complaint"**) against the Defendant. Through the Complaint, the Plaintiff sought damages for alleged breaches of the Policy. According to the Plaintiff, the Defendant breached the Policy by refusing to pay amounts owed, and failing to per-

form necessary repairs, caused by "sinkhole activity" on the Plaintiff's property. On February 4, 2016, the Court entered an order dismissing the Complaint (Doc. No. 14) (the **"Dismissal Order"**) for failure to state a claim. In the Dismissal Order, the Court noted that the Complaint lacked well-pleaded allegations regarding (i) the Policy provision(s) it claims have been breached, (ii) the damages it has incurred, and (iii) the relief it claims it is entitled to receive under the Policy.

On March 1, 2016, the Plaintiff filed an *Amended Complaint for Breach of Insurance Contract and Jury Trial Demand* (Doc. No. 19) (the **"Amended Complaint"** or **"FAC"**), Through the Amended Complaint, the Plaintiff alleges that the Policy is an "all risks" policy, which covers all "direct and physical loss or damage" unless specifically excluded or limited therein. (FAC, at ¶ 11). The Plaintiff further alleges that "[a]s an exception to an exclusion, the Policy also covers loss or damage caused by 'sinkhole collapse' which, 'means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.'" (FAC, at ¶ 12).

The Plaintiff alleges that "[o]n or about March 24, 2011 ... Plaintiff's representatives discovered direct physical loss and damage to the Building, including, but not limited to, progressive physical settlement and cracking damage to the walls and floors of the Building consistent with damage caused by sinkhole collapse as defined in the Policy." (FAC, at ¶ 14). The Plaintiff also alleges that the Defendant's own investigations have demonstrated that there are "sinkhole conditions" and "sinkhole activity" on or around the Defendant's property, including "cracking damage to the sidewalks, knee walls, exterior walls, masonry, CMU walls, privacy walls, drywall, slab on grade, pool and pool tiles of the Building." (FAC, at ¶¶ 27, 29, & 30). The

Plaintiff alleges that its own expert, George Sinn, Jr., discovered "'significant sinkhole activity' and 'sinkhole conditions' at the Building" that occurred between September 9, 2010 and September 9, 2011, including "differential settlement associated with a loss of soil support." (FAC, at ¶¶ 37 & 38). According to the Plaintiff, Mr. Sinn recommended "additional testing and remediation be performed 'as soon as possible to avoid <u>further soil collapse</u> and potential building condemnation." (FAC, at ¶ 39) (emphasis in original). The Plaintiff alleges that these findings and opinions "meet the definition of 'sinkhole collapse' in the Policy" and, as a result, that the Defendant has breached the Policy by failing to pay for the cost of remediating the damage to the property.

The Defendant filed the Motion to Dismiss on March 15, 2016. Through the Motion to Dismiss, the Defendant argues that the Amended Complaint fails to allege facts that plausibly demonstrate coverage under the Policy's "sinkhole collapse" exception. Moreover, the Defendant argues that the Plaintiff's allegations of "progressive physical settlement" foreclose coverage under the Policy, as those allegations are contrary to the "sudden sinking or collapse" required under the "sinkhole collapse" exception. The Plaintiff responds by arguing that the allegations in the Amended Complaint are sufficient to state a claim for "sinkhole collapse," and that a "sudden" settlement or collapse is not required under the "sinkhole collapse" exception. In addition, the Plaintiff references expert testimony from a previously undisclosed expert, James Funderburk, that "'sinkhole collapse' is verified as a cause of damage at the Timber Pines property." (Response, at p. 8).

Since the Plaintiff did not disclose Mr. Funderburk prior to the March 9, 2016 deadline to make its initial expert witness

disclosures, the Defendant seeks to strike Mr. Funderburk's testimony and to prevent it from being considered in connection with the Motion to Dismiss. The Plaintiff responds by arguing that Mr. Funderburk's report is a timely rebuttal report that was obtained in response to the Defendant's expert disclosures. The Plaintiff further responds that the Defendant has not been prejudiced by the late disclosure, as discovery remained open until June 20, 2016; well after the disclosure of Mr. Funderburk's opinions.

## III. Legal Analysis

### A. Preliminary Matters

#### 1. Motions to Strike

■ In the Motions to Strike, the Defendant asks the Court to strike or otherwise exclude Mr. Funderburk's opinions as untimely. Federal Rule of Civil Procedure 26(a)(2) states that "a party must disclose to the other parties the identity of any [expert witnesses] it may use at trial," along with a written report that contains, among other things "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(A) & (B). "A party must make these disclosures at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(D). However, "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) .... [the disclosure must be made] within 30 days after the other party's disclosure." FED. R. CIV. P. 26(a)(2)(D)(ii).

■ "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Cage v. City of Chicago*, 2012 WL 5557410, at *2 (N.D.Ill. Nov. 14, 2012). "A party may not offer testimony under the guise of 'rebuttal' only to pro-

vide additional support for his case in chief." *Id.* "A 'plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Id.* As a result, a plaintiff may not seize upon language used in a defendant's expert report "as a chance to re-do their opening expert report." *See Kirola v. City and Cty. of San Francisco*, 2010 WL 373817, at *1 (N.D.Cal. Jan. 29, 2010). This is particularly true where the expert evidence being offered on rebuttal is evidence that supports an element of the plaintiff's prima facie case. *See Sports Area Mgmt., Inc. v. K & K Ins. Grp., Inc.*, 2008 WL 4877452, at *1–2 (N.D.Ill. June 26, 2008). Here, the opinion expressed by Mr. Funderburk, i.e. that the Plaintiff's damages were caused by a "sinkhole collapse," goes directly to the Plaintiff's prima facie case. This is particularly true given that the Amended Complaint expressly alleges coverage under the Policy's "sinkhole collapse" exception. *See* (FAC, at ¶¶ 14, 33, 40, 41, & 46). Accordingly, at best, Mr. Funderburk's opinion bolsters the opinions of the Plaintiff's initial expert witness, Mr. Sinn, and at worst constitutes an attempt to obtain a do-over of Mr. Sinn's initial report. Under either scenario, Mr. Funderburk's report is not a proper rebuttal report under Rule 26(a)(2)(D)(ii).

■ "If a party fails to provide information ... as required by Rule 26(a) ... the party is not allowed to use that information or witness to supply evidence on a motion ... unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Thus, pursuant to Rule 37(c)(1), "[f]ailing to disclose an expert witness by a court-ordered deadline results in an automatic and mandatory exclusion of the witness, unless the nondisclosure was justified or harmless." *Cage*, 2012 WL 5557410, at

*2. Since Mr. Funderburk is not a proper rebuttal witness, his opinions must be excluded under Rule 37(c)(1), unless the Plaintiff's failure to submit them prior to the initial expert disclosure deadline was substantially justified or harmless. Rather than make this determination based on the limited record before the Court, the Court will strike Dr. Funderburk's opinions for purposes of ruling on the Motion to Dismiss. To the extent the Plaintiff wishes to use Dr. Funderburk's opinions at some future juncture of the case, the Plaintiffs must obtain leave of court through an appropriate motion. To that end, the parties are directed to meet and confer within seven (7) days regarding any proposed future use of Dr. Funderburk's opinions and, to the extent the parties are unable to reach an agreement, any motion for leave to extend the initial expert disclosure deadline with respect to Mr. Funderburk must be filed within seven (7) days thereafter.

### 2. Motion for Judicial Notice

Federal Rule of Evidence 201 provides that the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c)(2). The Court "may take judicial notice at any stage of the proceeding." FED. R. EVID. 201(d).

 Here, the Defendant is requesting that the Court take judicial notice of the fact that it is a surplus lines insurer and, as a result, is not subject to Chapter 627 of the Florida Statutes. The Plaintiff does not object to the Court taking judicial notice of the fact that the Defendant is a surplus lines insurer, but contends that caselaw interpreting Chapter 627 of the Florida Statutes can (and should) be considered in determining whether the Plaintiff's losses are covered under the Policy. Upon review, the Court will take judicial notice of the fact that the Defendant is a surplus lines insurer, but agrees with the Plaintiff that Chapter 627 of the Florida Statutes and related caselaw may provide helpful guidance in interpreting the Policy.

### B. Motion to Dismiss

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1261 (11th Cir. 2012). Legal conclusions, as opposed to well-pled factual allegations, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Courts apply a two-pronged approach when considering a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010). First, a court must "eliminate any allegations in [a] complaint that are merely legal conclusions." *Id.* A court must then take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotations omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim ... plausible on its face" is subject to dismissal. *Id.* at 1289. Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue

precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### 2. *Application to Amended Complaint*

■ The Policy states that the Defendant "will pay for direct physical loss of or damage to Covered Property ... caused by or resulting from any Covered Cause of Loss." (Policy, at 18). The Policy defines "Covered Cause of Loss" as "Risks Of Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations." (Policy, at 33). The Policy contains an "Earth Movement" exclusion, pursuant to which the Defendant "will not pay for loss or damage caused directly or indirectly by .... Earth sinking (*other than sinkhole collapse*), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty." (Policy, at 33) (emphasis added). In Section G. Definitions, the Policy defines the term "sinkhole collapse" as "the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. The cause of loss does not include: (1) The cost of filling sinkholes; or (2) Sinking or collapse of land into manmade underground cavities." (Policy, at 41).

■ Here, the Plaintiff is attempting to recover under the Policy's "sinkhole collapse" exception. The "sinkhole collapse" exception is an "exception to an exclusion" and, as a result, the Plaintiff bears the burden of proving that its claim is covered. *See Divine Motel Grp., LLC v. Rockhill Ins. Co.*, 2015 WL 4095449, at *6 (M.D.Fla. July 7, 2015) (stating that in determining whether a policy provides for coverage, (i) "the insured bears the [initial] burden of proving that a claim is covered," (ii) "the burden of proving an exclusion to coverage is on the insurer," and (iii) where an exclusion applies, but the insured argues that

"there is an exception to the exclusion, the burden returns to the insured to prove the exception and show coverage."). Thus, the Plaintiff must plead that its losses were caused by a "sudden sinking or collapse of land" to recover under the Policy's "sinkhole collapse" exception.

The main point of contention between the Plaintiff and Defendant regarding the sufficiency of the Amended Complaint is the rate of sinking or collapse necessary to constitute a "sudden sinking or collapse" under the Policy. The Defendant cites *Amitie One Condominium Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 2010 WL 5088231, at *8 (M.D.Pa. Aug. 31, 2010) for the proposition that the term "sudden means 'happening or coming unexpectedly' or 'marked by or manifesting abruptness or haste.' " *Id.; see also Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp.*, 636 So.2d 700, 704 (Fla.1993) ("The ordinary and common usage of the term 'sudden' includes a temporal aspect with a sense of immediacy or abruptness."). The Plaintiff, on the other hand, cites *Zimmer v. Aetna Ins. Co.*, 383 So.2d 992, 994 (Fla. 5th DCA 1980) for the proposition that the term "sudden" does not mean "instantaneously" because "[t]he time required for action of water on rock to create a void, when measured in terms of the earth's age may be a 'sudden' process but in terms of a man's lifetime, the progress of such process is hardly capable of discernment." *Id.*

The primary difference between *Zimmer* and *Amitie* is that the *Amitie* court distinguished between the terms "sinkhole collapse" and "sinkhole activity," finding that the former required a sudden rate of collapse, while *Zimmer* focused on whether "sinkhole collapse" was an "insurable sinkhole loss" under the 1979 version of Section 627.351(2) of the Florida Statutes. Since *Zimmer* references "sinkhole losses," a term currently defined in Section

627.706 of the Florida Statutes, it is necessary to consider the applicability and purpose of Section 627.706 of the Florida Statutes. Under Section 627.706, property insurers are required to "provide coverage for a catastrophic ground cover collapse," and must "make available, for an appropriate additional premium, coverage for sinkhole losses." FLA. STAT. § 627.706(1)(a) & (b) (2016). Thus, on its face, Section 627.706 differentiates between "catastrophic ground cover collapse" and "sinkhole losses."

"Catastrophic ground cover collapse" is defined as "geological activity that results in ... (1) The *abrupt collapse* of the ground cover; (2) A depression in the ground cover clearly visible to the naked eye; and (3) Structural damage to the covered building, including the foundation." FLA. STAT. § 627.706(2)(a)(1)-(3) (2016) (emphasis added). "Sinkhole loss," on the other hand, is defined as "structural damage to the covered building, including the foundation, caused by sinkhole activity." FLA. STAT. § 627.706(j) (2016). "Sinkhole activity," in turn, is defined as *"settlement or systematic weakening* of the earth supporting the covered building only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation." FLA. STAT. § 627.706(i) (2016) (emphasis added).

In the view of the Court, the "sinkhole collapse" exception in the Policy is more analogous to the "catastrophic ground cover collapse" coverage required under Section 627.706(1)(a) than the "sinkhole loss" coverage referenced in Section 627.706(1)(b). Notably, the definitions of "sinkhole collapse" under the Policy and "catastrophic ground cover collapse" under Section 627.706(1)(a) both contain a temporal element, i.e. that the collapse be "sud-

den" or "abrupt." "Sinkhole activity," on the other hand, contains no temporal element with respect to the rate of collapse. Moreover, both "sinkhole collapse" and "catastrophic ground cover collapse" contemplate a "collapse" of land or ground cover, while "sinkhole activity," on the other hand, merely consists of "settlement or systematic weakening of the earth." In light of the foregoing, the Court believes that the "sinkhole collapse" exception contemplates the abrupt rate of collapse described in the *Amitie* case. This is particularly true given that *Zimmer* was decided prior to the enactment of Section 627.706 of the Florida Statutes in 1981 and, as a result, the *Zimmer* court was not in a position to consider the distinctions between the terms "sinkhole collapse" and "sinkhole activity."

Here, as described previously, the Plaintiff alleges that its representatives "discovered ... damage to the Building, including, but not limited to, *progressive* physical settlement and cracking damage to the walls and floors of the Building." (FAC, at ¶ 14) (emphasis added). The Plaintiff also alleges "cracking damage to the sidewalks, knee walls, exterior walls, masonry, CMU walls, privacy walls, drywall, slab on grade, pool and pool tiles of the Building." (FAC, at ¶ 29). Finally, the Amended Complaint contains allegations of "differential settlement and physical damage during the policy period," which the Plaintiff claims have or could result in "further soil collapse and potential building condemnation." (FAC, at ¶ 39) (emphasis in original). The Plaintiff alleges that these "findings and opinions meet the definition of 'sinkhole collapse' in the Policy." (FAC, at ¶ 40).

Upon review, these allegations are not sufficient to satisfy the federal pleading standard. Notably, nowhere in the Amended Complaint does the Plaintiff allege a sudden or abrupt rate of collapse. Rather,

the only well-pleaded allegation in the Amended Complaint that squarely addresses the rate of sinking or collapse at the Property is contained in paragraph 14, which refers to losses "including, but not limited to, *progressive* physical settlement and cracking damage." (emphasis added). This allegation merely shows a possibility of coverage; not that the Plaintiff is entitled to relief. Specifically, taken as true, this allegation leaves open the possibility that the Plaintiff suffered losses caused by an abrupt or sudden collapse, but fails to reference losses other than those resulting in *"progressive* physical settlement and cracking damage." (FAC, at ¶ 14) (emphasis added). Thus, the Amended Complaint is subject to dismissal for failure to state a claim.

■ Having determined that the Amended Complaint fails to state a claim upon which relief can be granted, the Court must determine whether to grant the Plaintiff leave to amend. The Defendant argues that the Plaintiff's allegation of "progressive physical settlement," coupled with Mr. Sinn's finding of "differential settlement and physical damage" during the period of September 9, 2010 through September 9, 2011, demonstrate that the Plaintiff's damages were not sudden or abrupt. As a result, the Defendant posits that the Plaintiff's allegations foreclose any coverage under the "sinkhole collapse" exception. The Court disagrees. Unlike the allegations in the cases cited to by the Defendant, *Band v. Twin City Fire Ins. Co.* and *N.P.V. Realty Corp. v. Nationwide Mut. Assur. Co.*, which "clearly" and "unequivocally" barred coverage, the allegations in the Amended Complaint do not negate coverage under the Policy. To the contrary, the Plaintiff alleged that it "discovered direct physical loss and damage to the Building, *including, but not limited to,* progressive physical settlement and cracking damage to" the Property. (FAC, at ¶ 14) (emphasis added). For the reasons

discussed above, this allegation is insufficient to state a claim under the "sinkhole collapse" exception. However, it is possible that the Plaintiff sustained damage as a result of a sudden sinking or collapse, notwithstanding its admission that its losses included, without limitation, "progressive physical settlement and cracking." Thus, the Court will afford the Plaintiff one final opportunity to file an amended complaint. To state a claim, any second amended complaint must contain well-pleaded facts that plausibly demonstrate coverage under the "sinkhole collapse" exception.

## IV. Conclusion

Accordingly, it is

**ORDERED** that the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** Any second amended complaint must be filed within 14 days from entry of this order.

It is further **ORDERED** that the Motions to Strike are **GRANTED IN PART AND DENIED IN PART,** and the parties are directed to meet and confer within seven (7) days regarding the future use of Dr. Funderburk's opinions. Any motion for leave to extend the initial expert disclosure deadline with respect to Mr. Funderburk must be filed within seven (7) days thereafter.

It is further **ORDERED** that the Motion for Judicial Notice is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 28th day of June, 2016.